IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | |
|---|---|
| SAINTSBURY HOLDINGS, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) No. 1:06-cv-00014 |
| | ) JUDGE HAYNES |
| RMC, LLC; 570877 US, INC.; and | ) |
| 493181 US, INC., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM

Plaintiff, Saintsbury Holdings, LLC ("Saintsbury"), a Nevada limited liability company with its principal place of business in Vancouver, British Columbia, Canada, filed this action under 28 U.S.C. § 1332, the federal diversity statute against the Defendants: 570877 US, Inc., ("570") a Tennessee corporation with its principal place of business in Lewisburg, Tennessee; 493181 US, Inc. ("493"), a corporation, whose state of incorporation is unknown, with its principal place of business in Lewisburg, Tennessee; and RMC, LLC ("RMC"), a Tennessee limited liability company with its principal place of business in Lewisburg, Tennessee. Plaintiff's claims arise from the Defendants' alleged anticipatory breach of a contract for the sale of real property in Marshall County, Tennessee. In its amended complaint, Plaintiff seeks specific performance of the contract, damages, expenses, costs and attorneys' fees.

Before the Court are Defendant RMC's motion to dismiss (Docket Entry No. 12) and the 570 and 493 Defendants' motion to dismiss (Docket Entry No. 29) the first amended complaint. In sum, the 570 and 493 Defendants contend: (1) that Plaintiff is unauthorized to do business in Tennessee because it lacks a certificate of authority, and therefore lacks standing to pursue its claims; (2) that Plaintiff failed to plead its satisfaction of the conditions precedent in the contract

1

and therefore fails to state a claim upon which relief can be granted and (3) that the alleged contract is not sufficiently definite to be enforced. In its motion, RMC adopts the 570 and 493 Defendants' lack of standing and defective pleading contentions and also argues that the addendum that Plaintiff relies upon as an extension of the contract, is not signed by RMC and therefore is invalid under the statute of frauds. RMC also contends that the contract does not impose any duty upon RMC to fulfill the obligations alleged in the complaint.

In its response (Docket Entry No. 22) Plaintiff asserts, in essence; (1) that Tennessee law does not require a court to dismiss a foreign limited liability company's action for lack of a certificate of authority, but authorizes a stay of the proceeding until the foreign company obtains the requisite certificate; (2) that a certificate of authority is unnecessary because Saintsbury is not "transacting business" in Tennessee; (3) as to any pleading deficiency, Saintsbury's amended complaint sufficiently alleges satisfaction of any conditions precedent; (4) that the doctrine of equitable estoppel precludes the RMC's statute of frauds defense given a signed letter on RMC's letterhead that caused Saintsbury to rely on an extended deadline to consummate the sale; and (5) that RMC's contractual obligation includes the assignment of the option contract, as alleged in the complaint.

In its reply (Docket Entry No. 32), RMC responds that Plaintiff is required to obtain a certificate of authority is required because Saintsbury's admission in its complaint that Saintsbury "successfully negotiated agreements for the future development of the subject property and surrounding property," qualifies as "transacting business" in Tennessee. (Docket Entry No. 21, First Amended Complaint at ¶ 13). RMC also argues that the letter that is attached to its amended complaint as the basis for Saintsbury's equitable estoppel claim, is from a person unrelated to RMC.

2

In its reply (Docket Entry No. 36), the 590 and 493 Defendants argue that Saintsbury's allegation that "[a]ll conditions precedent . . . have been performed" is a legal conclusion and fails to plead adequate facts to show satisfaction of a condition precedent, namely payment of a $100,000 deposit. These Defendants also contend that the property at issue has three components and the complaint does not identify which property option is covered by Saintsbury's specific performance claim.

For the reasons set forth below, the Court concludes that the amended complaint sufficiently states a claim upon which relief can be granted. Accordingly, the motions of RMC and Corporation Defendants to dismiss should be denied.

### A. Analysis of the Complaint

On or about June 6, 2005, Saintsbury entered into a contract with the Defendants for the sale of a golf course and surrounding property in Marshall County, Tennessee. (Docket Entry No. 21, First Amended Complaint at ¶¶ 5-6). The contract provides, in pertinent part, as follows:

> The purchase price to be paid is $2,000,000 (U.S.D.) [Two Million Dollars] subject to the following:
>
> * * *
>
> AS TO ASSIGNMENT OF 50% OWNERSHIP OF ALL OPTIONS TO PURCHASE RIGHTS HELD BY RMC, LLC (SEE SCHEDULE "A" OUTLINE IN PINK MARKER. SEE EXHIBIT "B" PRELIMINARY LEGAL.)
>
> AS TO A 50% EQUITY INTEREST IN ALL LANDS/BUILDINGS, FIXTURES/EQUIPMENT, PERMITS, LICENSES, ASSETS, ETC. OWNED BY SELLER AND/OR SADDLECREEK PARTNERSHIP. (SCHEDULE "A" – YELLOW MARKER & ATTACHED LEGAL)
>
> AS TO A 25% EQUITY INTEREST IN 18 FULLY SERVICED LEGAL LOTS. (SCHEDULE "A")
>
> * * *
>
> The following contingencies shall apply:

3

> [1-] SUBJECT TO BUYER'S APPROVAL AFTER INITIAL SITE INSPECTION WITHIN 45 DAYS OF ACCEPTANCE OF THIS AGREEMENT. DEPOSIT TO BE INCREASED TO TEN THOUSAND DOLLARS UPON WRITTEN REMOVAL OF THIS SUBJECT BY BUYER.
>
> 2 - SUBJECT TO FEASIBILITY STUDY AND WRITTEN APPROVAL OF SAME BY BUYER WITHIN 90 DAYS OF ACCEPTANCE OF THIS AGREEMENT. DEPOSIT TO BE INCREASED TO ONE HUNDRED THOUSAND DOLLARS UPON BUYER'S WRITTEN REMOVAL OF THIS SUBJECT.
>
> * * *
>
> SELLER UNCONDITIONALLY HEREBY AGREES:
> TO GRANT BUYER THE OPTION TO PURCHASE 100% OF ALL LAND/BUILDINGS, ASSETS, FURNITURE/EQUIPMENT/FIXTURES/PERMITS/LICENSES OWNED BY SELLER AND/OR SADDLECREEK PARTNERSHIP, <u>ON OR BEFORE 180 DAYS FROM ACCEPTANCE OF THIS AGREEMENT</u>. THE TOTAL PURCHASE PRICE IS FIVE MILLION FIVE HUNDRED THOUSAND DOLLARS [$5,500,000.00], WHICH INCLUDES COMPLETION ON ALL OF THE RMC, LLC OPTIONED PROPERTIES, OR; FOUR MILLION DOLLARS [$4,000,000] TOTAL PURCHASE PRICE AND 100% ASSIGNMENT OF ALL RMC, LLC'S OPTION RIGHTS TO BUYER. SUBJECT TO THE FOLLOWING: ANY ASSIGNMENT OF THIS CONTRACT OR SALE TO A THIRD PARTY BY BUYER, THAT RESULTS IN NET SALES PROCEEDS GREATER THAN THE BUYER'S OPTION PRICE CONTAINED IN THIS AGREEMENT, WILL BE SPLIT 50/50 BETWEEN BUYER AND SELLER.

(Docket Entry No. 1, Complaint attachment thereto, Exhibit A at p. 1) (emphasis added).

The RMC option rights referred to in the contract is an option agreement dated October 22, 2003, between the sellers, Charles Edward Roberts, Sr. and his wife Mary Ann Roberts, and RMC, as buyer. (Docket Entry No. 21, First Amended Complaint at ¶ 7 and Docket Entry No. 1, Complaint attachment thereto at Exhibit B).

Plaintiff alleges that the deadline on its option to purchase the property covered in the contract, was extended to February 6, 2006, according to the terms of an addendum, dated September 6, 2005. (Docket Entry No. 21, First Amended Complaint at ¶ 8 and Docket Entry No. 1, Complaint attachment thereto at Exhibit C thereto). Plaintiff also alleges that Defendants

4

acknowledged in writing their agreement to the terms of this unsigned addendum. (Docket Entry No. 21, First Amended Complaint at ¶ 8). The referenced letter that is dated January 25, 2006 is on the Defendant's stationary and is signed by Chris Rust and states, in pertinent part: "[w]e already gave you an extension on September 6, 2005 and now the option runs only to February 6, 2006." (Docket Entry No. 21, First Amended Complaint, attachment thereto, Exhibit D, letter at 2).

According to Plaintiff, all conditions precedent to the Defendants' contractual obligations have been performed, have occurred, have been waived or are excused by the Defendants' conduct. (Docket Entry No. 21, First Amended Complaint at ¶ 11). On information and belief, Plaintiff alleges that a portion of the property subject to the contract has been conveyed to third parties. Id. at ¶ 9. Plaintiff alleges that Defendants have refused to provide information requested by Plaintiff, including evidence of good title to the property, information regarding the operations of the golf course, the title, financial information and a survey of the property to be conveyed. Id. at ¶¶ 9-10.

Plaintiff alleges that prior to the February 6, 2006 extended deadline, Defendants anticipatorily breached the contract by communicating their unwillingness to assign the option agreement. Id. at ¶ 12. Plaintiff alleges that Defendants refused to cooperate, thereby preventing the timely closing of the purchase of the property. Id. at ¶ 15. Assuming receipt of information from Defendant, including survey(s) and evidence of good title, Plaintiff asserts that it is ready, willing and able to close the purchase of real estate contemplated by the contract, including assignment of the option agreement. Id. at ¶ 14. Plaintiff alleges its reliance on the contract to negotiate successfully, agreements for the future development of the subject property and

5

surrounding property. Id. at ¶ 13. Plaintiff contends that the delay in development caused by Defendants' alleged actions has resulted in lost profits. Id.

### B. Conclusions of Law

"[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the Plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Hartford Fire Ins. Co. v. California, 509 U.S. 764, 811 (1993); Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Consideration of a motion to dismiss requires the court accept the complaint's factual allegations as true and to construe the complaint liberally in favor of the plaintiff. Perry v. Am. Tobacco Co., Inc., 324 F.3d 845, 848 (6th Cir. 2003). Yet, a court "need not accept as true legal conclusions or unwarranted factual inferences." Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir. 1987) (internal quotation omitted). Moreover, "it is not . . . proper to assume that the [Plaintiff] can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." Assoc. Gen. Contractors v. Cal. State Counsel of Carpenters, 459 U.S. 519, 526 (1983). To survive a motion to dismiss under Rule 12(b)(6), "the complaint must contain 'either direct or inferential allegations respecting all the material elements'" of the claim. Tahfs v. Proctor, 316 F.3d 584, 590 (6th Cir. 2003) (quoting Scheid v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434, 436 (6th Cir. 1988)).

For a majority of civil actions, the "notice" pleading provisions of Fed. R. Civ. P. 8, require only a "short and plain statement of the claim showing the pleader is entitled to relief," because generally "[n]o technical forms of pleadings or motions are required." Fed. R. Civ. P. 8(a)(2), (e)(1). Under Rule 8, the complaint "does not have to set out in detail the facts on which the claim for relief is based, but must provide a statement sufficient to put the opposing party on

6

notice of the claim." 2 Moore's Federal Practice § 8.04[1] (Matthew Bender 3d ed.). Moreover, "[a] complaint must contain either direct or inferential allegations with respect to all material elements necessary to sustain a recovery under some viable legal theory." Performance Contracting, Inc. v. Seaboard Sur. Co., 163 F.3d 366, 369 (6th Cir 1998).

Yet, for certain claims and defenses, Rule 9 of the Federal Rules of Civil Procedure imposes "special pleading" requirements. Fed. R. Civ. P. 9. One such requirement is that "[i]n pleading the performance or occurrence of conditions precedent, it is sufficient to aver generally that all conditions precedent have been performed or have occurred." Fed. R. Civ. P. 9(c). Further, Fed. R. Civ. P. 10(c) provides that where as here, the contract is attached to the complaint, the attachments are deemed to be part of the complaint.

With the allegations in Plaintiff's complaints, coupled with the contract attached thereto, the Court concludes that Plaintiff has met the Rules' pleading requirements. Rule 9(c) expressly allows general averment of conditions precedent and though a more detailed statement may be desirable, a general averment that all conditions precedent have been fulfilled is sufficient to satisfy the pleading requirements. See EEOC v. Missouri Pacific R.R. Co., 379 F. Supp. 1, 2 (W.D. Tenn. 1973). Rule 9 does not require that Plaintiff allege satisfaction of each specific condition precedent, as the Defendants argue. Thus, the Court finds that the pleading requirements for conditions precedent have been satisfied.

As to the governing legal principles in a diversity action, the District Court must apply the substantive law of the forum. Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938). In addition, the conflict law of the forum determines which state's substantive law shall apply. Klaxon Co. v. Stentor Electric Mfg., 313 U.S. 487 (1941). Under Tennessee law, the validity of a contract and the substantive rights of the parties thereunder are governed by the law which the parties

7

intended to govern their relations, with the legal presumption that absent a contrary intent, the parties intended the law of the place of making of the contract. Goodwin Bros. Leasing, Inc. v. H & B., Inc., 597 S.W.2d 303 (Tenn. 1980), reh'g denied, (1980). All parties rely upon Tennessee law for this sale of Tennessee real property and the Court applies Tennessee law.

As to Plaintiff's lack of standing, the Court considers the affidavit that Plaintiff, a foreign LLC, has not filed for a certificate of authority with the state of Tennessee. See Docket Entry No 14, Grunow Affidavit. Tennessee law provides that "[a] foreign LLC transacting business in this state without a certificate of authority may not maintain a proceeding in any court in this state until it obtains a certificate of authority." Tenn. Code Ann. § 48-246-601(a). Yet, by statute, "acquiring ownership of real and personal property" in Tennessee, does not qualify as transacting business." Tenn. Code Ann. § 48-246-102(a)(9). Moreover, Plaintiff's lack of a certificate of authority, if required, does not require dismissal, but can justify a stay of the proceedings. "A court may stay a proceeding commenced by a foreign LLC, its successor or assignee, until it determines whether the foreign LLC or its successor requires a certificate of authority. If it so determines, the court may further stay the proceeding until the foreign LLC or its successor obtains the certificate." Tenn. Code Ann. § 48-246-601(c). The Court elects to defer any determination on whether Saintsbury is "transacting business" in Tennessee until after discovery.

Tennessee's general contract principle is that, "[t]he ascertainment of the intention of the parties to a written contract is a question of law or judicial function for the court to perform when the language is plain, simple and unambiguous." Forde v. Fisk University, 661 S.W.2d 883, 887 (Tenn. Ct. App. 1983) (citing Petty v. Sloan, 277 S.W.2d 355, 358 (Tenn. 1955)). As this Court observed, ambiguity as to a contract's term is not created because the parties disagree

8

as to its meaning. Oman Construction Co. v. Tennessee Valley Auth., 486 F. Supp. 375, 382 (M.D. Tenn. 1979). When clear contract language reveals the intention of the parties, there is no need to apply rules of construction. Id. One party's view of the contract does not necessarily mean that such provisions are part of the contract. In re D.L. Bouldin Constr. Co., 6 B.R. 288, 295 (Bankr. E.D. Tenn. 1980).

In the absence of fraud or mistake, an unambiguous contract must be interpreted and enforced according to its plain terms. See FDIC v. Armstrong, 784 F.2d 741, 744 (6th Cir. 1986); Cocke County Bf. Of Highway Comm'rs v. Newport Utils. Bds., 690 S.W.2d 231, 327 (Tenn. 1985). A contract is ambiguous only when its meaning is unclear and the contract may be understood in more than one way. Empress Health & Beauty Spa, Inc. v. Turner, 503 S.W.2d 188, 190-91 (Tenn. 1973). In construing a contract, the entire contract should be considered. Newport, 690 S.W.2d at 237 (citing Crouch v. Shepard, 44 Tenn. 383, 4 Cold. 383 (1867)). A contract "must be viewed from beginning to end and all its terms must pass in review, for one clause may modify, limit or illuminate another." Associated Press v. WGNS, Inc., 348 S.W.2d 507, 512 (Tenn. Ct. App. 1961).

An enforceable contract must, among other elements, result from a meeting of the minds and must be sufficiently definite to be enforced. Johnson v. Central National Ins. Co. of Omaha, Neb., 356 S.W.2d 277, 281 (Tenn. 1962); Price v. Mercury Supply Co., Inc., 682 S.W.2d 924, 932 (Tenn. Ct. App. 1984). The contemplated mutual assent and meeting of the minds cannot be accomplished by the unilateral action of one party, nor can it be accomplished by an ambiguous course of dealing between the parties from which differing inferences regarding continuation or modification of the original contract might reasonably be drawn. Batson v. Pleasant View Utility Dist., 592 S.W.2d 578, 582 (Tenn. Ct. App. 1979). In addition, a mere expression of

intent or a general willingness to do something does not amount to an offer or agreement. Talley v. Curtis, 129 S.W.2d 1099, 1102 (Tenn. Ct. App. 1939).

Even though a manifestation of intention may be understood as an offer, such manifestation cannot form a contract unless the terms of the contract are reasonably certain. The terms of a contract are reasonably certain if they provide a basis for determining the existence of a breach and for awarding appropriate remedy. If one or more terms of a proposed bargain are undefined or uncertain, such fact reflects the lack of acceptance of any offer. Davidson v. Holtzman, 47 S.W.3d 445, 453-54 (Tenn. Ct. App. 2000) and Restatement Contracts 2d § 33.

First, the Court concludes the contract appears to be sufficiently definite to be enforced. The contract attached to the complaint is sufficient to suggest that the parties had reached a mutual agreement as to the precise property at issue. The options are each specific enough in terms of price and obligations of each side as to create an enforceable contract. The land subject to the agreement is further identified in the attachments and exhibits to the original contract. Plaintiff's allegation that Defendants communicated their unwillingness to do so, is sufficient to state a claim upon which relief can be granted.

Second, the Court disagrees with RMC's contention that the contract did not impose any the obligations as alleged in the complaint. These allegations are for the Defendants' alleged failure to provide information, such as title and the financial status of the property to be purchased. While there does not appear to be an express duty under the contract for Defendants to provide Plaintiff with all of the information in Plaintiff's complaint, the contract clearly imposes a duty to assign the option agreement, if Plaintiff elected to exercise that option. Moreover, an implied duty of good faith exists in every contract to meet the "reasonable contractual expectations of the parties." Wallace v. National Bank of Commerce, 938 S.W.2d

10

684, 687 (Tenn. 1996). A reasonable juror could find that the Defendants' alleged failure to provide necessary information to the Plaintiff to enable the Plaintiff to perform its core contractual obligations, is breach of this implied condition in the parties' contract.

Under the Tennessee Statute of Frauds, an action cannot be brought upon a contract for the sale of land "unless the promise or agreement, upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or some other person lawfully authorized by such party." Tenn. Code Ann. § 29-2-101(a)(4). Options to sell real property fall within the Statute of Frauds. Anderson v. Hacks Crossing Partners, 3 S.W.3d 482, 485 (Tenn. Ct. App. 1999). The purpose of this statute is to guard against misunderstandings as to the nature and extent of agreements for the sale of land. See Brandel v. Moore Mortg. & Inv. Co., 774 S.W.2d 600, 605 (Tenn. Ct. App. 1989). Accordingly, a memorandum of an agreement to sell land must show the estate intended to be sold with "reasonable certainty[.]" Baliles v. Cities Serv. Co., 578 S.W.2d 621, 623 (Tenn. 1979).

Yet, the doctrine of equitable estoppel is recognized in Tennessee as an exception to the Statute of Frauds. Beazley v. Turgeon, 772 S.W.2d 53, 58 (Tenn. Ct. App. 1989). A claim for equitable estoppel arises from the voluntary conduct of one party whereby another party is precluded from asserting rights which may have otherwise existed against a person who in good faith relied upon such conduct to his detriment. Id. Equitable estoppel does not require fraudulent intent, but does require some voluntary action. Id.

As to the alleged deadline extension based upon the letter addendum, on this type of motion, the Court must construe any factual allegations and draw all inferences in the complaint in a light most favor to Plaintiff. This letter to extend the deadline is from Chris Rust and is

11

written on the Defendants' letterhead. By inference, this letter was sent by an apparent agent of the Defendants and reflects an agreed extension of the deadline for the sale of the property. Upon the Defendants' rejection of any such extension, a claim of equitable estoppel arises. RMC's contention that the letter is not from an agent of RMC is a factual dispute to be decided after discovery. The Rules 8 and 9 do not require more specific allegations of agency.

For the above stated reasons, the Court concludes that RMC's motion to dismiss (Docket Entry No. 12) and Corporation Defendants' motion to dismiss (Docket Entry No. 29) the first amended complaint should be denied.

An appropriate Order is filed herewith.

**ENTERED** this the _10th_ day of July, 2006.

WILLIAM J. HAYNES, JR.
United States District Judge